## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **v.** | : | **Criminal No. 21-cr-406 (JEB)** |
| | : | |
| **LEONARD PEARSON RIDGE IV,** | : | |
| | : | |
| **Defendant.** | : | |

### GOVERNMENT'S SENTENCING MEMORANDUM

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this sentencing memorandum in connection with the above-captioned matter. For the reasons set forth herein, the government requests that the Court sentence defendant Leonard Pearson Ridge IV to 45 days of imprisonment, one year of supervised release to include, among other conditions, sixty (60) hours of community service, and $500 in restitution.

### I.      Introduction

The defendant participated in the January 6, 2021 attack on the United States Capitol—a violent attack that forced an interruption of the certification of the 2020 Electoral College vote count, threatened the peaceful transfer of power after the 2020 Presidential election, injured more than one hundred law enforcement officers, and resulted in more than one million dollars of property damage.

The defendant pleaded guilty to one count of 18 U.S.C. § 1752(a)(1), Entering and Remaining in a Restricted Building or Grounds. As explained herein, the sentenced requested above is appropriate in the circumstances of this case because: (1) prior to January 6, 2021, the defendant used electronic communications to express an anticipation that he and others would "try to block the session of [C]ongress"; (2) the defendant used his cell phone to record video of

unlawful activity inside the U.S. Capitol Building, including an individual using an object to strike a closed office door; and (3) after departing the riot, the defendant used social media to boast about the riot, including that he had stormed the U.S. Capitol Building and that individuals had broken down doors.

The defendant's conduct on January 6, like the conduct of scores of other individuals, took place in the context of a large and violent riot that relied on numbers to overwhelm law enforcement, breach the Capitol, and disrupt the proceedings. The requested sentence is necessary and appropriate in light of the defendant's participation in the riot and his particular actions described herein.

## II.       Factual and Procedural Background

### *The January 6, 2021, Attack on the Capitol*

To avoid exposition, the government refers to the general summary of the attack on the U.S. Capitol included in the Statement of Offense. *See* ECF 20 at 1-3. A riot cannot occur without rioters, and each rioter's actions – from the most mundane to the most violent – contributed, directly and indirectly, to the violence and destruction of that day.

### *Defendant's Role in the January 6, 2021, Attack on the Capitol*

Prior to January 6, 2021, the defendant used electronic communication to express to a friend that he believed the 2020 Presidential Election was stolen, that something needed to change, and that "I think we are going to try to block the session of [C]ongress."  ECF 20 at 3.

On the morning of January 6, 2021, the defendant attended a rally in support of then-President Trump in Washington, D.C., and then walked with a crowd of people towards the U.S. Capitol Building, up the steps, and into the U.S. Capitol Building.  ECF 20 at 3-4.  The defendant

entered the building through an unguarded Upper West Terrace door, at approximately 2:35 pm, as highlighted by the red box in Figure 1 below.



**Figure 1**

The Upper West Terrace door is centrally located on the West Front of the Capitol Building, behind a set of temporary grandstands built for the upcoming inauguration, marked by the red square in Figure 2 below.  *See* Architect of the Capitol, *Inauguration at the Capitol* (available at https://www.aoc.gov/what-we-do/programs-ceremonies/inauguration, last visited December 29, 2021).



**Figure 2**

Although this doorway was unguarded at the time the defendant entered it, the building was in lockdown and, in order to gain access to this location, the defendant would have had to pass through a large mob of people, some of whom were assaulting law enforcement on the West Front Plaza at the foot of the inauguration stage. In that location, armor-clad law enforcement officers were engaged with members of a mob, having set up amplification equipment at approximately 2:03 pm that repeatedly broadcast an order commanding the crowd to disperse. In conjunction with that amplified recording, law enforcement were deploying crowd control munitions against the mob. Figure 3 depicts what the West Plaza looked like around the time the defendant traveled by it as captured by a surveillance camera.



**Figure 3**

Several social media messages from the defendant from around this time indicate that he was witnessing this violence. *See* ECF 1 (Statement of Facts) at 2-4; ECF 30 (Final Presentence Investigation Report) at 7-8.

Once inside, the defendant walked around the interior of the U.S. Capitol Building, and used his cell phone to record video footage of the unlawful events; this included video footage of an individual using an object to strike a closed office door. ECF 20 at 4. Figures 4 and 5 depict the defendant in the U.S. Capitol Rotunda during the events of January 6. In Figure 4, the defendant gestured down a hallway, which he entered at approximately 2:37 pm.



**Figure 4**



**Figure 5**

While in the U.S. Capitol Building, the defendant joined a crowd in attempting to gain access to the Senate side of the Capitol.  As depicted in news footage of this location, the crowd chanted "U.S.A.! U.S.A.!" while pushing against a line of police officers.  *See* Newsflare, *Mob incited by Trump storms interior of Capitol, including offices of McConnell and Pelosi in terrifying act* (available at [https://www.newsflare.com/video/402653/mob-incited-by-trump-storms-interior-of-capitol-including-offices-of-mcconnell-and-pelosi-in-terrifying-act](https://www.newsflare.com/video/402653/mob-incited-by-trump-storms-interior-of-capitol-including-offices-of-mcconnell-and-pelosi-in-terrifying-act)).  The defendant filmed this activity and then, having been stopped by the police, turned around returned to the Rotunda.  *Id.*  A still of this footage is below as Figure 6.



**Figure 6**

At approximately 3:00 pm, the defendant approached the East Rotunda doors, an available exit, and used his phone as depicted in Figure 7, a still from Capitol surveillance footage.



**Figure 7**

After spending another ten minutes in the Rotunda, the defendant returned to the east Rotunda

Doors and departed at approximately 3:11 pm, as depicted in Figure 8, from the same surveillance

camera.



The defendant departed the U.S. Capitol Building while the riot was ongoing after having spent approximately 35 minutes inside. *Id*.

Later that day, the defendant boasted on social media about his actions and the consequences of the riot. The defendant described to a friend that he had stormed the U.S. Capitol Building, and that rioters had broken down doors to the offices of Senator Mitch McConnell and Congresswoman Nancy Pelosi. ECF 20 at 4. The defendant also boasted to a friend that he had fought with police and been tear-gassed multiple times, ECF 1 (Statement of Facts) at 11, though law enforcement has searched the surveillance video and identified no factual basis for these contentions. The defendant also used electronic communications on January 6 to describe to a friend that he went inside the U.S. Capitol Building to record video, and to state that he did not break or steal anything. ECF 20 at 4. The defendant knew when he entered the U.S. Capitol Building that he had entered a restricted building or grounds without lawful authority to do so. *Id*.

*The Charges and Plea Agreement*

On June 16, 2021, the defendant was charged in a five-count indictment with violations of 18 U.S.C. §§ 1512(c)(2) and 2 (obstruction of an official proceeding and aiding and abetting), 1752(a)(1) (entering and remaining in a restricted building or grounds), and 1752(a)(2) (disorderly conduct in a restricted building or grounds, and 40 U.S.C. §§ 5104(e)(2)(D) (disorderly conduct in a Capitol building) and 5104(e)(2)(G) (parading, demonstrating, or picketing in a Capitol building).

On October 1, 2021, the defendant pleaded guilty to Count Two of the indictment, charging him with violating 18 U.S.C. § 1752(a)(1) (entering and remaining in a restricted building or grounds). The guilty plea was entered pursuant to a plea agreement in which the government agreed to dismiss the remaining counts of the indictment at the time of sentencing. *See* ECF 19.

## III.    Statutory Penalties

A violation of 18 U.S.C. § 1752(a)(1) carries a maximum sentence of one year of imprisonment; a fine of up to $100,000 (pursuant to 18 U.S.C. § 3571(b)(5)); a term of supervised release of not more than one year (pursuant to 18 U.S.C. § 3583(b)(3)); and an obligation to pay any applicable interest or penalties on fines and restitution[1] not timely made.[2]

---

[1] The plea agreement includes an agreement that the defendant will pay $500 in restitution to the Architect of the Capitol.  ECF 20 at 8.  *See* 18 U.S.C. § 3663(a)(3); *United States v. Anderson*, 545 F.3d 1072, 1078-79 (D.C. Cir. 2008)

[2] The Court may also sentence the defendant to up to five years of probation if he is not sentenced to a term of imprisonment.  *See* 18 U.S.C. § 3561(a) & (c), United States Sentencing Guidelines ("USSG") §§ 5B1.1, 5B1.2.  Conditions of probation may include a period of home detention and community service.  USSG § 5B1.3(e).

### IV.     The Sentencing Guidelines and Guidelines Analysis

As the Supreme Court has instructed, a district court "should begin all sentencing proceedings by correctly calculating the applicable Guidelines range." *United States v. Gall*, 552 U.S. 38, 49 (2007). "As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark" for determining a defendant's sentence. *Id*. at 49. The United States Sentencing Guidelines ("U.S.S.G." or "Guidelines") are "the product of careful study based on extensive empirical evidence derived from the review of thousands of individual sentencing decisions" and are the "starting point and the initial benchmark" for sentencing. *Id*. at 49.

In the plea agreement, the parties agreed on the following applicable U.S.S.G. provisions, which are in the agreement with the calculation in the Presentence Report ("PSR"):

| | |
|---|---|
| Base Offense Level (U.S.S.G. §2B2.3(a)) | 4 |
| Specific Offense Characteristics (U.S.S.G. §2B2.3(b)(1)(A)) | 2 |
| Acceptance of Responsibility (USSG §3E1.1(a)) | -2 |
| Total Adjusted Offense Level | 4 |

The defendant has no prior criminal convictions, resulting in a criminal history category I. Accordingly, the U.S.S.G. imprisonment range is 0-6 months.[3]

"The Guidelines as written reflect the fact that the Sentencing Commission examined tens of thousands of sentences and worked with the help of many others in the law enforcement community over a long period of time in an effort to fulfill [its] statutory mandate." *Rita v. United*

---

[3] The defendant incorrectly argues in his sentencing memorandum that the Presentence Report failed to correctly calculate the offense level, but the defendant agreed to an offense level of 4 in the plea agreement, and agreed that neither party would seek a different offense-level calculation.  ECF 19 at 2-4.  The provisions regarding breach of the plea agreement are set forth at ECF 19 at 9.

*States*, 551 U.S. 338, 349 (2007). As required by Congress, the Commission has "'modif[ied] and adjust[ed] past practice in the interests of greater rationality, avoiding inconsistency, complying with congressional instructions, and the like.'" *Kimbrough v. United States*, 552 U.S. 85, 96 (2007); 28 U.S.C. § 994(m). In so doing, the Commission "has the capacity courts lack to 'base its determinations on empirical data and national experience, guided by professional staff with appropriate expertise,'" and "to formulate and constantly refine national sentencing standards." *Kimbrough*, 552 U.S. at 108. Accordingly, courts must give "respectful consideration to the Guidelines." *Id*. at 101. As the Third Circuit has stressed:

> The Sentencing Guidelines are based on the United States Sentencing Commission's in-depth research into prior sentences, presentence investigations, probation and parole office statistics, and other data. U.S.S.G. §1A1.1, intro, comment 3. More importantly, the Guidelines reflect Congress's determination of potential punishments, as set forth in statutes, and Congress's on-going approval of Guidelines sentencing, through oversight of the Guidelines revision process. See 28 U.S.C. § 994(p) (providing for Congressional oversight of amendments to the Guidelines). Because the Guidelines reflect the collected wisdom of various institutions, they deserve careful consideration in each case. Because they have been produced at Congress's direction, they cannot be ignored.

*United States v. Goff*, 501 F.3d 250, 257 (3d Cir. 2005).

"[W]here judge and Commission both determine that the Guidelines sentences is an appropriate sentence for the case at hand, that sentence likely reflects the § 3553(a) factors (including its 'not greater than necessary' requirement)," and that significantly increases the likelihood that the sentence is a reasonable one. *Rita*, 551 U.S. at 347 (emphasis in original). In other words, "the Commission's recommendation of a sentencing range will 'reflect a rough approximation of sentences that might achieve § 3553(a)'s objectives.'" *Kimbrough*, 552 U.S. at 89.

Here, while the Court must balance all of the § 3553 factors to fashion a just and appropriate sentence, the Guidelines unquestionably provide the most helpful benchmark. As this Court

knows, the government has charged a considerable number of persons with crimes based on the January 6 riot. This includes hundreds of felonies and misdemeanors that will be subjected to Guidelines analysis. In order to reflect Congress's will, the Guidelines will be a powerful driver of consistency and fairness moving forward.

**V.      Sentencing Factors Under 18 U.S.C. § 3553(a)**

The Court should next consider all of the applicable factors set forth in 18 U.S.C. § 3553(a). *Gall*, 552 U.S. at 49-50. Under § 3553(a), "[t]he court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing. 18 U.S.C. § 3553(a). The purposes of sentencing, pursuant to § 3553(a)(2), are as follows:

> (A)      to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
> (B)      to afford adequate deterrence to criminal conduct;
> (C)      to protect the public from further crimes of the defendant; and
> (D)      to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

Some of the factors this Court must consider include: the nature and circumstances of the offense, § 3553(a)(1); the history and characteristics of the defendant, *id*.; the need for the sentence to reflect the seriousness of the offense and promote respect for the law,  § 3553(a)(2)(A); the need for the sentence to afford adequate deterrence, § 3553(a)(2)(B); the Guidelines and the Guideline range, 18 U.S.C.  § 3553(a)(4), and the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct. § 3553(a)(6).

**A.  The Nature and Circumstances of the Offense**

The attack on the U.S. Capitol on January 6, 2021, was a criminal offense unparalleled in American history. It represented a grave threat to our democratic norms; indeed, it was one of the only times in our history when the building was literally occupied by hostile participants. By its very nature, the attack defies comparison to other events.

While each defendant should be sentenced based on their individual conduct, this Court should note that each person who entered the Capitol on January 6 without authorization did so under the most extreme of circumstances. As they entered the Capitol, they would—at a minimum—have crossed through numerous barriers and barricades and heard the throes of a mob. Depending on the timing and location of their approach, they also may have observed extensive fighting with law enforcement officials and smelled chemical irritants in the air. No rioter was a mere tourist that day.

Additionally, while looking at the defendant's conduct, the Court must assess that conduct on a spectrum. In determining a fair and just sentence on this spectrum, the Court should look to a number of critical factors, to include: (1) whether, when, and how the defendant entered the Capitol building; (2) whether the defendant encouraged violence; (3) whether the defendant encouraged property destruction; (4) the defendant's reaction to acts of violence or destruction; (5) whether during or after the riot, the defendant destroyed evidence; (6) the length of the defendant's time inside of the building, and exactly where the defendant traveled; (7) the defendant's statements in person or on social media; (8) whether the defendant cooperated with, or ignored commands from law enforcement officials; and (9) whether the defendant demonstrate sincere remorse or contrition. While these factors are not exhaustive nor dispositive, they help to place each defendant on a spectrum as to their fair and just punishment. Had the defendant personally engaged in violence or destruction of property, he would be facing additional charges and/or penalties associated with that conduct. The absence of violent or destructive acts on the part of the defendant is therefore not a mitigating factor in misdemeanor cases.

Here, the defendant's criminal conduct included several aggravating features. Prior to January 6, 2021, the defendant used electronic communications to express an anticipation that he

and others would "try to block the session of [C]ongress." As he approached the Capitol Building, in a scene of struggle between the mob and law enforcement, the defendant appears to have shouted words of encouragement which he broadcast to social media. While inside the U.S. Capitol Building during the riot, the defendant used his cell phone to record video of unlawful activity, including an individual using an object to strike a closed office door, and the defendant appeared to make phone calls. The defendant also remained inside for more than half an hour, joining a mob that was attempting to push its way towards the Senate Chamber and filming as rioters struggled against the police line. After departing the riot, the defendant boasted on social media, including that he had stormed the U.S. Capitol Building, been pepper sprayed multiple times, assaulted police, and that individuals had broken down doors. There is no evidence that the defendant personally destroyed property, broke into any Congressional offices, or assaulted anyone while inside the U.S. Capitol Building, and the defendant accepted responsibility for his conduct by pleading guilty.

### B.  The History and Characteristics of the Defendant

The defendant is a 20-year-old high school graduate, who was 19 years old at the time of the criminal conduct. He has a history of employment and is currently employed. He appears to have close family ties and lives with his parents and a sibling. The defendant has no prior arrests or criminal convictions. The defendant accepted responsibility for his criminal conduct for pleading guilty.

### C.  The Need for the Sentence Imposed to Reflect the Seriousness of the Offense and Promote Respect for the Law

The attack on the U.S. Capitol building and grounds was an attack on the rule of law. "The violence and destruction of property at the U.S. Capitol on January 6 showed a blatant and appalling disregard for our institutions of government and the orderly administration of the

democratic process."[4] As with the nature and circumstances of the offense, this factor supports a sentence of incarceration, as it will in most cases, including misdemeanor cases, arising out of the January 6 riot. *See United States v. Joshua Bustle and Jessica Bustle*, 21-cr-238-TFH, Tr. 08/24/21 at 3 ("As to probation, I don't think anyone should start off in these cases with any presumption of probation. I think the presumption should be that these offenses were an attack on our democracy and that jail time is usually -- should be expected") (statement of Judge Hogan).

### D.  The Need for the Sentence to Afford Adequate Deterrence

Deterrence encompasses two goals: general deterrence, or the need to deter crime generally, and specific deterrence, or the need to protect the public from further crimes by this defendant. 18 U.S.C. § 3553(a)(2)(B-C), *United States v. Russell*, 600 F.3d 631, 637 (D.C. Cir. 2010).

*General Deterrence*

The demands of general deterrence weigh in favor of incarceration, as they will for nearly every case arising out of the violent riot at the Capitol. Indeed, general deterrence may be the most compelling reason to impose a sentence of incarceration. For the violence at the Capitol on January 6 was cultivated to interfere, and did interfere, with one of the most important democratic processes we have: the peaceful transfer of power to a newly elected President. As noted by Judge Moss during sentencing, in *United States v. Paul Hodgkins*, 21-cr-188-RDM:

> [D]emocracy requires the cooperation of the governed. When a mob is prepared to attack the Capitol to prevent our elected officials from both parties from performing their constitutional and statutory duty, democracy is in trouble. The damage that [the defendant] and others caused that day goes way beyond the several-hour delay in the certification. It is a damage that will persist in this country for decades.

---

[4] Federal Bureau of Investigation Director Christopher Wray, Statement before the House Oversight and Reform Committee (June 15, 2021), available at https://oversight.house.gov/sites/democrats.oversight.house.gov/files/Wray%20 Testimony.pdf

Tr. at 69-70. Indeed, the attack on the Capitol means "that it will be harder today than it was seven months ago for the United States and our diplomats to convince other nations to pursue democracy. It means that it will be harder for all of us to convince our children and our grandchildren that democracy stands as the immutable foundation of this nation." *Id.* at 70..

The gravity of these offenses demands deterrence. This was not a protest. *See United States v. Paul Hodgkins*, 21-cr-188-RDM, Tr. at 46 ("I don't think that any plausible argument can be made defending what happened in the Capitol on January 6th as the exercise of First Amendment rights.") (statement of Judge Moss). And it is important to convey to future potential rioters— especially those who intend to improperly influence the democratic process—that their actions will have consequences. There is possibly no greater factor that this Court must consider.

*Specific Deterrence*

The actions of the defendant – before, during and after the riot – demonstrates the need for specific deterrence. As stated above, the defendant anticipated prior to January 6 that individuals would try and block the session of Congress and he expected to join in that endeavor.  The defendant appeared to encourage the efforts of the mob, and used his cell phone to record portions of the riot, including video of an individual striking at an office door in the U.S. Capitol Building. And the defendant boasted about the riot after departing.  On the other side of the scale, the defendant is a youthful offender who also did the right thing by accepting responsibility for his conduct by pleading guilty at an early stage of the proceedings.

**E.  The Need to Avoid Unwarranted Sentencing Disparities**

The government has charged hundreds of individuals for their roles in this one-of-a-kind assault on the U.S. Capitol, ranging from unlawful entry misdemeanors, to assaults on law enforcement officers, to conspiracy to corruptly interfere with Congress. Each offender must be

sentenced based on their individual circumstances and conduct, but with the backdrop of the January 6 riot in mind. Moreover, each offender's case will exist on a spectrum that ranges from conduct meriting a probationary sentence to crimes necessitating years of imprisonment. The misdemeanor defendants will generally fall on the lower end of that spectrum, but misdemeanor breaches of the U.S. Capitol on January 6, 2021, were not minor crimes. A probationary sentence should not become the default.[5] As Judge Lamberth explained: "I don't want to create the impression that probation is the automatic outcome here because it's not going to be." *United States v. Anna Morgan-Lloyd*, 1:21-cr-00164 (RCL), Tr. 6/23/2021 at 19.

In previous sentencings of January 6 defendants, the government and the sentencing courts have made meaningful distinctions between offenders. Those who engaged in felonious conduct are generally more dangerous, and thus, treated more severely in terms of their conduct and subsequent punishment. Those who trespassed, but engaged in aggravating factors such as defendant Ridge in this case, merit institutional incarceration. The sentencing judges in this district have frequently concluded that those who trespassed but, unlike defendant Ridge, did not engage

---

[5] Early in this investigation, the Government made a very limited number of plea offers in misdemeanor cases that included an agreement to recommend probation, including in *United States v. Anna Morgan-Lloyd*, 1:21-cr-00164(RCL); *United States v. Valerie Elaine Ehrke*, 1:21-cr-00097(PFF); and *United States v. Donna Sue Bissey*, 1:21-cr-00165(TSC). The government is abiding by its agreements in those cases, but has made no such agreement in this case. *Cf. United States v. Rosales-Gonzales*, 801 F.3d 1177, 1183 (9th Cir. 2015) (no unwarranted sentencing disparities under 18 U.S.C. § 3553(a)(6) between defendants who plead guilty under a "fast-track" program and those who do not given the "benefits gained by the government when defendants plead guilty early in criminal proceedings") (citation omitted).

serious aggravating factors, deserve a sentence more in line with minor incarceration or home detention. [6]

Avoiding unwarranted disparities requires the Court to consider not only a defendant's "records" and "conduct" but other relevant sentencing criteria, such as a defendant's expression of remorse or cooperation with law enforcement. *See United States v. Hemphill*, 514 F.3d 1350, 1365 (D.C. Cir. 2008) (no unwarranted disparity regarding lower sentence of codefendant who, unlike the defendant in *Hemphill*, pleaded guilty and cooperated with the government).

Sentencing courts are permitted to consider sentences imposed on co-defendants in assessing disparity. *E.g., United States v. Knight*, 824 F.3d 1105, 1111 (D.C. Cir. 2016); *United States v. Mejia*, 597 F.3d 1329, 1343-44 (D.C. Cir. 2010); *United States v. Bras*, 483 F.3d 103, 114 (D.C. Cir. 2007). The Capitol breach was *sui generis*: a mass crime with significant distinguishing features, including the historic assault on the seat of legislative branch of federal government, the vast size of the mob, the goal of impeding if not preventing the peaceful transfer of Presidential power, the use of violence by a substantial number of rioters against law enforcement officials, and large number of victims. Thus, even though many of the defendants were not charged as conspirators or as codefendants, the sentences handed down for Capitol breach offenses is an appropriate group for purposes of measuring disparity of any future sentence.

While no previously sentenced case contains the specific mix of aggravating and mitigating factors present here, the Court may consider prior sentences imposed on January 6 defendants who, like defendant Ridge, pleaded guilty to violating 18 U.S.C. 1752(a)(1).

---

[6] Attached as Exhibit A to this sentencing memorandum is a table providing additional information about the sentences imposed on other Capitol riot defendants.  That table also shows that the requested sentence here would not result in unwarranted sentencing disparities.

***U.S. v. Gracyn Courtright***, 1:21-cr-72 (CRC) – Sentenced to one month of incarceration, 12 months of supervised release, 60 hours of community service, $500 restitution (defendant briefly entered the Senate floor area, temporarily seized U.S. government property, attempted to break into locked doors, made inflammatory social media posts)

***U.S. v. Dana Joe Winn***, 1:21-cr-139 (TNM) – Sentenced to 10 days of incarceration (weekends), 12 months of probation, 100 hours of community service, $500 restitution (defendant expressed prior intent to stop the vote, and demonstrated a prior awareness of the potential for violence, posted video to social media)

***U.S. v. Felipe Marquez***, 1:21-cr-136 (RC) – Sentenced to three months of home confinement, 18 months of probation, $500 restitution (defendant interfered with law enforcement inside the U.S. Capitol Building, entered the private hideaway area of a Congressional office, travelled interstate with a firearm on way to Washington, D.C., prior to January 6, posted video to social media)

***U.S. v. Rachael Lynn Pert***, 1:21-cr-139 (TNM) – Sentenced to 24 months of probation, 100 hours of community service, $500 restitution (defendant expressed prior intent to stop the vote, and demonstrated a prior awareness of the potential for violence, posted video to social media)

***U.S. v. Kevin Cordon***, 1:21-cr-277 (TNM) – Sentenced to 12 months of probation, 100 hours of community service, $4,000 fine, $500 restitution (defendant wore body armor and a gas mask, recorded unlawful activity, participated in media interview)

Defendant Ridge engaged in conduct analogous in some respects to the defendants listed above who served a term of imprisonment, including by (1) demonstrating a prior intent to interfere with the Congressional proceedings; (2) posting video of unlawful conduct to social media; (3) attempting to enter a sensitive area of the U.S. Capitol Building, and (4) boasting about unlawful conduct using electronic communications.

Also useful to consider are prior sentences of imprisonment imposed on January 6 defendants who pleaded guilty to other misdemeanors, including the following among others.

> ***U.S. v. Matthew Mazzocco***, 1:21-cr-54 (TSC) – Sentenced to 45 days of imprisonment, 60 hours of community service, $500 restitution (defendant entered sensitive areas of U.S. Capitol Building, posed for selfie-style photographs, electronic communications indicating agreement with disrupting congressional proceeding)

> ***U.S. v. Robert Bauer***, 1:21-cr-49 (TSC) – Sentenced to 45 days of imprisonment, 60 hours of community service, $500 restitution (defendant entered sensitive areas of U.S. Capitol Building, posed for photographs, serious criminal history)

> ***U.S. v. Edward Hemenway***, 1:21-cr-49 (TSC) – Sentenced to 45 days of imprisonment, 60 hours of community service, $500 restitution (defendant entered sensitive areas of U.S. Capitol Building, posed for photographs, serious criminal history)

> ***U.S. v. Robert Reeder***, 1:21-cr-166 (TFH) – Sentenced to three months of imprisonment, $500 restitution (defendant entered the U.S. Capitol building twice, inside for more than 30 minutes, recorded unlawful conduct inside, boasted about his participation afterwards)

> *U.S. v. Derek Jancart*, 1:21-cr-148 (JEB) – Sentenced to 45 days of imprisonment, $500 restitution (defendant was a military veteran, prepared for violence by bringing a gas mask and two-ray radio, entered sensitive areas, videotaped unlawful conduct and posted it to social media, boasted on social media, destroyed evidence by deleting videos)

> *U.S. v. Erik Rau*, 1:21-cr-467 (JEB) – Sentenced to 45 days of imprisonment, $500 restitution (defendant prepared for violence by bringing kevlar gloves, entered sensitive areas, videotaped unlawful conduct, destroyed evidence by deleting videos)

> *U.S. v. Stephanie Miller*, 1:21-cr-266 (TSC) – Sentenced to 14 days of imprisonment, 60 hours community service, $500 restitution (defendant entered building through a window near Senate, expressed pride about her role in the riot)

Like a number of these other cases, defendant Ridge spent significant time inside the U.S. Capitol Building, videotaped the conduct there, attempted to enter a sensitive area of the building via a mobbed hallway, and expressed pride about his role in the riot. The defendant's conduct is distinguished in part, however, by his youth, the absence of a military background, no prior criminal history, and no indication that he prepared in advance for violence or destroyed evidence.

In all, these analogous cases indicate that the government's recommended sentence would not present an unwarranted sentencing disparity.

In any event, the goal of minimizing unwarranted sentencing disparities in § 3553(a)(6) is "only one of several factors that must be weighted and balanced," and the degree of weight is "firmly committed to the discretion of the sentencing judge." *United States v. Coppola*, 671 F.3d 220, 254 (2d Cir. 2012). The § 3553(a) factors that this Court assesses are "open-ended," with the

result that "different district courts may have distinct sentencing philosophies and may emphasize and weigh the individual § 3553(a) factors differently; and every sentencing decision involves its own set of facts and circumstances regarding the offense and the offender." *United States v. Gardellini*, 545 F.3d 1089, 1093 (D.C. Cir. 2008). "[D]ifferent district courts can and will sentence differently—differently from the Sentencing Guidelines range, differently from the sentence an appellate court might have imposed, and differently from how other district courts might have sentenced that defendant." *Id*. at 1095.

## VI.    Conclusion

Sentencing requires the Court to carefully balance the § 3553(a) factors. As explained herein, some of those factors support a sentence of incarceration and some support a more lenient sentence. Balancing these factors, the government recommends that this Court sentence the defendant to 45 days of imprisonment, one year of supervised release to include, among other conditions, sixty (60) hours of community service, and $500 in restitution. Such a sentence would protect the community, promote respect for the law, and deter future crime, while recognizing the defendant's early acceptance of responsibility.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
DC Bar No. 481052

By:    */s/*_____
MICHAEL J. FRIEDMAN
Assistant United States Attorney
NY Bar No. 4297461
555 Fourth Street, N.W.
Washington, DC 20530
Michael.Friedman@usdoj.gov
(202) 252-6765